THOMAS A. DAVIS v. HOUSTON & TEXAS CENTRAL RAILWAY COMPANY.

Decided October 12, 1901.

1.—Carrier of Passengers—Connecting Lines—Liability of Initial Carrier.

Where a railway company sells to a passenger a through ticket over its own and connecting lines, stipulating that it acts only as agent for the other lines, its contract of carriage is complete when it has safely transported the passenger and delivered him at its depot at the point of connection with the next line, and it can not, after a reasonable time has been allowed the passenger for departing from the depot, be held liable on its contract of carriage for any act occurring thereafter.

2.—Same—Misdirecting Passenger—Only Ordinary Care Required.

Where a railway company's contract of carriage with a passenger, holding a through ticket over connecting roads, has ceased by virtue of his delivery at its depot, it is liable for the mistake of its agent there in directing the passenger to a wrong train for the continuance of his journey only in the event of want of ordinary care on the part of the agent.

3.—Same—Negligence Is Question for the Jury.

A requested charge making the act of the carrier's agent, in giving the pas-

senger erroneous information as to which train he should take next, negligence per se, is properly refused, since it is for the jury to determine whether or not such act was negligence.

Appeal from Harris.  Tried below before Hon. William H. Wilson.

*Ryan, Brown & Lowry,* for appellant.

*Baker, Botts, Baker & Lovett* and *Frank Andrews,* for appellee.

PLEASANTS, Associate Justice.—Appellant brought this suit for himself and as next friend of his five minor children to recover of appellee damages for injuries alleged to have been sustained by appellant's wife and said minor children through the negligence of appellee's servants.  Plaintiff's petition alleges that on the 6th day of October, 1898, said wife and children were at the town of Georgetown, in Williamson County, Texas, and were desirous to go to the town of Beaumont, in Jefferson County, Texas; that the said wife purchased a ticket from the International & Great Northern Railway Company's agent in Georgetown entitling her and her said children to continuous transportation over that line to Austin, Texas; over the line of the Houston & Texas Central Railway Company from Austin to Houston, Texas, and from Houston to Beaumont, Texas, over the line of the Texas & New Orleans Railway Company by continuous passage, and that said agent was the duly authorized agent of all three of said railway companies in selling said ticket; that said passengers were safely carried from Georgetown to Austin over the line of the International, and from Austin to Houston over the line of appellee railway company, and disembarked at appellee's Grand Central depot in Houston, Texas, and entered same to wait the departure of the Texas & New Orleans Railway Company's train for Beaumont; that while waiting in said depot they were approached by appellee's night depot master, who inquired of them their destination, and they informed him they were going to Beaumont, Texas; that he then left them and returned to them shortly afterwards and informed them that their train was ready to receive passengers, and he then and there proceeded to assist them to board a train pointed out to them by him as being the proper train to take them to their destination; that plaintiff's wife and children were unaccustomed to travel, were strangers in Houston, and did not know what train to take in order to reach Beaumont, nor which direction it should be headed to go there; that the passenger trains of five or six railways arrived and departed from said depot to and from various parts of the State, and that among other things it was the duty of appellee's said night depot master to assist and direct passengers upon the proper trains for their respective destinations; that they relied upon his knowledge and efficiency.  The train they were placed upon by said depot master, at about 9 o'clock at night, was in fact a train of appellee's bound north; that this fact was unknown to them

until the conductor came to take up their tickets and informed them; that they then demanded to be taken back to Houston, where they expected to meet Thomas A. Davis, appellant; that instead thereof they were carried to Hempstead, in Waller County, Texas, where they were compelled to remain in appellee's depot until the next morning, when they were returned to Houston; that by reason of their discomfort, fright, and exposure to cold damp air at said depot during the night at Hempstead, they were rendered sick and suffered much physical and mental pain and were permanently injured.

In answer to plaintiff's petition appellee set up by way of defense a general denial and contributory negligence on the part of said wife and children.

Upon a trial of the case before a jury in the court below a verdict and judgment were rendered in favor of appellee, from which judgment this appeal is prosecuted. There is but one question presented for our consideration on this appeal, and that is whether or not the relation of passenger and carrier existed between plaintiff's wife and children and the appellee at the time she alleges she was put upon the wrong train by appellee's depot master at its depot in the city of Houston. The facts bearing upon this issue, briefly stated, are as follows: The plaintiff's wife purchased from the International & Great Northern Railway Company, at Georgtown, Texas, a coupon ticket in the usual form, which entitled her and her children to passage over the International & Great Northern Railroad from Georgetown to Austin, over the appellee's railroad from Austin to Houston, and over the Texas & New Orleans Railroad from Houston to Beaumont. The coupon over appellee's road is marked, "H. & T. C. Co. Austin to Houston, void if detached." The ticket stipulated that the International & Great Northern Railroad Company acted only as agent for the other lines in selling said ticket. Appellant's wife and children took passage on appellee's train at Austin on the 6th day of October, 1898, and were safely transported to Houston, at which place they arrived and were delivered at the Grand Central depot at 7 o'clock p. m. of the day on which they left Austin. Upon arrival at said depot appellant's wife inquired of the ticket agent when the next train on the Texas & New Orleans Railroad would leave Houston for Beaumont, and was told that her train would not leave until the next morning. At that time the Texas & New Orleans was running but one train a day from Houston to Beaumont, which train left Houston at 5:20 o'clock a. m. This information was given appellant's wife the second time between 8 and 9 o'clock that night by the general superintendent of the depot building, who also informed her that she could remain in the building during the night if she so desired. She remained in the building until about half-past 10 o'clock, when she testifies that appellee's depot master came into the waiting room and told her that her train was ready and accompanied her out of the waiting-room and assisted her on a train which she supposed was the Beaumont train, but which in fact was a train on appellee's road going north. She did not

discover her mistake until the conductor demanded her ticket some time after the train left Houston, and she then asked that she be taken back to Houston. This the conductor declined to do, but took her on to Hempstead where she got off on the advice of the conductor and remained in the depot at that place until the next train on appellee's road going to Houston arrived at Hempstead. When the conductor put her off at Hempstead he gave her a note to the conductor on the next train south bound, and she was carried on this train back to Houston, at which place she arrived about 6 o'clock on the morning of the 7th of October, 1898.

The Grand Central depot at Houston, while owned by the appellee, was in common use as a joint depot by appellee, the Texas & New Orleans Railroad Company, and some six or seven other railway companies. The business of the depot master was to look after trains of all railroads using said depot while their trains were at the station, and there was no difference in the duty he owed in this regard to each of said roads, though he was paid for his services by the appellee. The Texas & New Orleans Railroad Company received and discharged its passengers at said depot, and the employes there performed exactly the same services for it that they did for appellee. There was no complaint on the part of appellant of any mistreatment of his wife and children on the trip from Houston to Hempstead, nor on the return trip, nor while they remained at the depot at Hempstead, the only complaint being that they suffered from cold and exposure. The evidence was conflicting as to whether or not appellant's wife was put upon the wrong train by appellee's depot master, and also as to whether she and her children sustained any injury. These issues and the issue of contributory negligence were properly submitted to the jury by the charge of the court, and in this respect the charge is not assailed.

Appellant's first assignment complains that the trial court erred in charging the jury that "the contract of carriage by the Houston & Texas Central Railroad Company was complete when it had safely transported plaintiff's wife and children from Austin and had delivered them at its depot in Houston, and it can not be held liable on its contract of carriage for any act occurring thereafter."

The contention of appellant is, that the appellee would be liable as a carrier to a passenger under said contract, for any injuries the plaintiff's wife and children may have suffered by reason of being misguided and misinformed while remaining in said depot at Houston under care of defendant's agents and servants for the purpose of continuing their journey on a connecting line of railway running trains out of defendant's said depot, said erroneous information being given by one of appellee's servants. While this charge may not be perfectly accurate in the abstract, in that it does not allow appellant's wife a reasonable time in which to leave appellee's depot, it was not a misapplication of the law as applied to the facts of this case, because the uncontradicted evidence shows that the alleged wrongful act of appellee's servant, if it occurred at all, occurred several hours after appellant's wife had been delivered at

appellee's depot. The contract of carriage only required appellee to transport appellant's wife and children from Austin to Houston and deliver them at its depot, and this contract was completed when they were so delivered and a reasonable time allowed them to leave said depot. The contention that the relation of carrier and passenger existed between appellee and appellant's wife and children while they remained at said depot awaiting transportation over the Texas & New Orleans Railroad, can not be sustained. The facts show that this depot was the depot of the Texas & New Orleans Railroad Company, where it received and discharged its passengers, and while waiting at said depot to take passage on a train on the Texas & New Orleans Railroad, with tickets entitling them to passage on said road, the appellant's wife and children were passengers of said road, and the relation of passenger and carrier between them and appellee had ceased. Harris v. Howe, 74 Texas, 534; Rozwadosfskie v. Railway, 1 Texas Civ. App., 487; Railway v. Franklin, 44 S. W. Rep., 702; Railway v. Griffith, 12 Texas Civ. App., 631.

Appellant's second, third and fifth assignments attack the charge of the court in applying the rule of ordinary care to the alleged act of appellee's depot master in directing appellant's wife to the wrong train. Our opinion being as stated in our consideration of the first assignment, that the relation of carrier and passenger did not exist between appellee and appellant's wife at the time of the alleged negligent act, the court correctly applied the rule of ordinary care in determining whether or not the act alleged was negligence.

Appellant's third assignment complains of the refusal of the court to submit the following special instruction to the jury: "If you believe from the evidence that plaintiff's wife, Pattie C. Davis, and his children were at the depot in Houston, as alleged in his petition, for the purpose of taking the Texas & New Orleans train for Beaumont upon a through ticket over the International & Great Northern Railway, the defendant's line and the Texas & New Orleans Railway, and if you further believe from the evidence that plaintiff's said wife, Pattie C. Davis, made inquiry and the defendant's said agent failed to give the information, or gave information not true in fact, and by reason thereof said Pattie C. Davis and children were induced to take the wrong train and thereby suffered injury, defendant would be liable, and you will find for plaintiffs."

The court did not err in refusing this instruction, (1) because the main charge had correctly and fully instructed the jury as to appellee's liability for the alleged negligent act of its servants; and (2) because the requested instruction is not the law in that it charges the jury that the act of appellee's servant in giving appellant's wife erroneous information as to the train she should take was negligence per se, when it was a question for the jury to determine whether or not such act would be negligence.

The sixth assignment complains of the refusal of the court to submit to the jury a special instruction requested by appellant, which charged the jury that the appellee was bound to exercise toward appellant's wife

and children the duty of a carrier to a passenger from the time they boarded its train at Austin until it had delivered them to its connecting line, the Texas & New Orleans Railroad, and so long as appellee's servants and employes exercised control over them. The uncontroverted evidence being that the alleged negligent act occurred after appellant's, wife and children had been delivered by appellee to its connecting carrier,. and that the servants and employes of appellee as such had at said time no control over nor care of appellant's wife and children, the requested charge was not applicable to the facts of the case, and presented an issue not raised by the evidence.

We find no error in the judgment of the court below, and it is affirmed.

*Affirmed.*

Writ of error refused.